UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIANA MISAS and RHONDA MCINTOSH,

Plaintiffs,

-against-

NORTH SHORE-LONG ISLAND JEWISH
HEALTH SYSTEM and JULIO CARDOZA,

Defendants.

14-cv-08787 (ALC) (DCF)

<u>OPINION AND ORDER</u>

ANDREW L. CARTER, JR., United States District Judge:

Plaintiffs Eliana Misas and Rhonda McIntosh bring this action against North Shore-Long Island Jewish Health System and its former employee, Julio Cardoza. Before the Court is Defendants' motion for summary judgment. Defendants argue that judgment should be granted in their favor on all of Plaintiffs' claims. Plaintiffs subsequently withdrew their claims for intentional infliction of emotional distress; negligent infliction of emotional distress; negligent hiring, retention, and supervision; and slander, leaving only claims for sexual harassment and retaliation in violation of Title VII, the New York State Human Rights Law, and the New York City Human Rights Law. For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

### I.    Factual Background

Plaintiffs Eliana Misas and Rhonda McIntosh both worked as Registrars in the Emergency Room of Lenox Hill Hospital, a member hospital of Defendant North Shore-Long Island Jewish Health System ("North Shore" or the "Hospital"). ECF No. 90 (Defendants' Rule 56.1 Statement ("Defs' 56.1 Stmt.")), at ¶¶ 1, 5-8. The Hospital hired McIntosh as a part-time employee on August 27, 2010, working 14 hours per week. Defs' 56.1 Stmt. ¶¶ 5-6. Misas was

hired as a full time employee on March 19, 2012. *Id.* ¶¶ 7-8. While the Hospital terminated Misas' employment in June 2013, McIntosh remains employed by the Hospital, albeit at a different facility. *Id.* ¶¶ 51-54.

During the time that Plaintiffs worked as Emergency Room Registrars, Defendant Julio Cardoza and non-party Omar Edwards served as their supervisors. *Id.* ¶¶ 9-10. Edwards worked as the weekday supervisor until his employment ended in July 2012, while Cardoza worked as the evening and weekend shift supervisor until he resigned in October 2013. *Id.* ¶¶ 9-10, 34, 72. Plaintiffs contend that Edwards and Cardoza subjected them to sexual harassment on a regular basis during the course of their employment. ECF No. 101 (Plaintiffs' Counterstatement to Defendants' Rule 56.1 Statement ("Pls' 56.1 Resp.")), at ¶¶ 75-85, 88-92. Defendants dispute this characterization as unsupported by the evidence. ECF No. 106 (Defendants' Counterstatement to Plaintiffs' Rule 56.1 Statement ("Defs' 56.1 Resp.")), at ¶¶ 75-85, 88-92.

On July 18, 2012, Plaintiffs sent their union representative a written statement in which they claimed that they went into Edwards' office and "moved the [computer] mouse by mistake," revealing files containing "plenty of provocative pictures." Defs' 56.1 Stmt. ¶ 27; ECF No. 89 (Affidavit of Emily Weisenbach ("Weisenbach Aff.")), Ex. M (Plaintiffs' Letter), at 1. In the letter, Misas further explained that Edwards previously had made "complete[ly] inappropriate comments about [her] weight [and her] breasts." Weisenbach Aff., Ex. M at 1. Prior to their July 2012 letter, neither Misas nor McIntosh had complained about sexual harassment by Edwards or any other Hospital employee. Defs' 56.1 Stmt. ¶¶ 24, 26. While they did not clarify their complaint back in time, Plaintiffs now contend—as they did in their August 2013 charges filed with the United States Equal Employment Opportunity Commission ("EEOC")—that they did not come across the "provocative pictures" by accident; rather, Cardoza brought Plaintiffs

into Edwards' office and showed them the pictures. Defs' 56.1 Stmt. ¶ 60; Pls' 56.1 Resp. ¶¶ 78-80; ECF No. 88 (Affidavit of Traycee Ellen Klein ("Klein Aff.")), Exs. A (Misas EEOC Charge), B (McIntosh EEOC Charge). However, Cardoza exhorted Plaintiffs not to mention him in their written complaint and threatened them with retaliation. Pls' 56.1 Resp. ¶ 80.

Upon receiving Plaintiffs' July 2012 letter, Emily Weisenbach, a "leader" in the Human Resources Department, launched an investigation which included interviewing Misas and seeking written statements from McIntosh and others. Defs' 56.1 Stmt. ¶¶ 20, 28, 31; Weisenbach Aff., Ex. N (Weisenbach Investigative File). However, because Plaintiffs' complaint mentioned Edwards and not Cardoza, Weisenbach's investigation focused only on Edwards. Defs' 56.1 Stmt. ¶ 30. Moreover, during Weisenbach's investigation, Plaintiffs did not mention any involvement by Cardoza or other problematic conduct by him. *Id.* ¶ 32. After the investigation, the Hospital asked Edwards to resign, which he did, on July 27, 2012. *Id.* ¶ 34.

Misas continued to work at the Hospital until June 21, 2013. *Id.* ¶ 51. The Hospital terminated her employment after it learned that she had been making copies of her timesheets contrary to Hospital policy and "generally-accepted standards of professional conduct." *Id.* ¶¶ 46-51. Misas now admits that she made copies of her timesheets and then lied to her supervisors about that fact, but explains that she did so only after learning that Cardoza had altered her timesheets in an effort to get her in trouble for arriving late to work. Pls' 56.1 Resp. ¶¶ 46-51. Misas explains that she was concerned "Cardoza would likely fabricate further evidence against [her]," and therefore "made copies of [her] timesheets before Cardoza had a chance to alter them." ECF No. 100 (Affidavit of Eliana Misas ("Misas Aff.")), ¶ 21.

McIntosh still works at a facility associated with the Hospital. As of December 2015, McIntosh became a full-time employee at the Manhattan Eye, Ear, and Throat Hospital where

she earns a higher hourly wage than she did at the Lenox Hill Hospital. Defs' 56.1 Stmt. ¶¶ 52-54. However, McIntosh now asserts that, prior to this promotion and transfer, Cardoza retaliated against her by denying her opportunities to work overtime and for transfers to other departments. Pls' 56.1 Resp. ¶ 94; ECF No. 99 (Affidavit of Rhonda McIntosh ("McIntosh Aff.")), at ¶ 25.

Approximately two months after the Hospital terminated Misas' employment, both Misas and McIntosh filed charges of discrimination with the EEOC. Defs' 56.1 Stmt. ¶¶ 58-59; Klein Aff., Exs. A-B. In those charges, filed on August 20, 2013, Plaintiffs for the first time explained that Cardoza was the one who showed them the pictures on Edwards' computer. *Id.* ¶ 60. Plaintiffs also made other allegations regarding Edwards' and Cardoza's behavior that they had not previously raised with anyone at the Hospital. They explained that, during the course of their employment, they were "continually exposed to harassment" by Edwards and Cardoza. Klein Aff., Ex. A at 1, Ex. B at 1. They also described specific incidences of harassment. For example, McIntosh described two inappropriate text message conversations with Cardoza. Defs' 56.1 Stmt. ¶¶ 61-66; Klein Aff., Ex. B at 3, Ex. C (Text Messages). In one conversation taking place on September 21, 2012, Cardoza told McIntosh that he would "spank [her]." Klein Aff., Ex. C at 2. In another conversation, on November 7, 2012, in response to text messages from McIntosh that she was feeling unwell, Cardoza wrote that she needed an "italian spanish [*sic*] sausage all the way." *Id.* at 1. Misas described comments Edwards made about her clothes and breasts, and asserted that Cardoza also "regularly made inappropriate comments." Klein Aff., Ex. A at 1-2.

In opposition to Defendants' motion for summary judgment, Plaintiffs have provided additional examples of sexual harassment by Edwards and Cardoza. Both state that Cardoza made "inappropriate jokes and comments of a sexual nature" to them "practically daily."

McIntosh Aff. ¶ 6; Misas Aff. ¶ 9. They also each describe an incident occuring in November 2012, in which Cardoza implied that Misas and McIntosh were prostitutes. McIntosh Aff. ¶ 8; Misas Aff. ¶ 10. On another occasion, Cardoza told Misas, who is Colombian, that "all Colombians are whores." Misas Aff. ¶ 11. Misas also describes an interaction with Cardoza in May 2013, in which he made graphic comments about her underwear. *Id.* ¶ 13. Finally, Misas explains that, on multiple occasions, Edwards commented on her physique and leered at her or tried to kiss her. *Id.* ¶¶ 3-4.

## II. Procedural Background

Plaintiffs initiated this action in November 2014 and, since that time, it has been host to innumerable disputes between the parties. Relevant here, shortly after the Court set a date for trial, Defendants sought leave to make a motion for summary judgment. ECF No. 79. The Court granted Defendants leave and they so moved. ECF Nos. 87 (Motion), 88 (Klein Aff.), 89 (Weisenbach Aff.), 90 (Defs' 56.1 Stmt.), 92 ("Defs' Memo."). Plaintiffs opposed the motion, submitting their counter-statement of facts and affidavits from Misas and McIntosh. ECF Nos. 98 ("Pls' Memo."), 99 (McIntosh Aff.), 100 (Misas Aff.), 101 (Pls' 56.1 Resp.). Defendants have replied, and the Court considers the motion fully submitted. ECF Nos. 104 (Reply Affirmation of Traycee Ellen Klein ("Klein Reply Aff.")), 105 (Reply Affidavit of Emily Weisenbach ("Weisenbach Reply Aff.")), 106 (Defs' 56.1 Resp.), 107 ("Defs' Reply Memo.").

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Material facts are those that may affect the outcome

of the case under governing law. *Id.* at 248. An issue of fact is "genuine" when a reasonable

finder of fact could render a verdict in favor of the nonmoving party based on the record as a

whole. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In deciding a motion for summary judgment, "the court's responsibility is not to resolve

disputed issues of fact but to assess whether there are any factual issues to be tried, while

resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v.*

*U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citing *Liberty Lobby*, 475 U.S. at 246-50);

*accord Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (court's role "is to identify

factual issues, not to resolve them") (citation and internal quotation marks omitted).

"The party seeking summary judgment has the burden to demonstrate that no genuine

issue of material fact exists." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (citation

omitted). In opposing the motion, the non-moving party "may not rest upon the mere allegations

or denials of his pleading." *Liberty Lobby*, 477 U.S. at 248 (citation and internal quotation marks

omitted). Rather, he must "must set forth specific facts showing that there is a genuine issue for

trial," *id.*, which must be "admissible in evidence," Fed. R. Civ. P. 56(c)(4). "[C]onclusory

statements, conjecture, and inadmissible evidence" will not defeat a motion for summary

judgment. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007) (citation omitted).

## DISCUSSION

### III.    Sexual Harassment Claims

Both Plaintiffs bring claims for sexual harassment arising out of their interactions with

former North Shore employees Cardoza and Edwards. Plaintiffs allege that their interactions

with Cardoza and Edwards constituted a hostile work environment based on their sex in violation

of Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City

Human Rights Law ("NYCHRL"). Title VII makes it an "unlawful employment practice" for

any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[1]

Defendants have moved for summary judgment on Plaintiffs' sexual harassment claims on the grounds that they are time barred. They further argue that liability for any violation of Title VII or the NYSHRL cannot be imputed to the Hospital. For the reasons that follow, the Court finds that neither Plaintiff's claims are time barred as a matter of law, but agrees with Defendants that the Hospital is entitled to summary judgment on the question of its liability under the NYSHRL.

### A.    Plaintiffs' Sexual Harassment Claims are not Time Barred

#### 1.    *Eliana Misas*

Defendants argue that Misas' Title VII sexual harassment claim is time barred because the two incidences of sexual harassment described in her EEOC charge, and repeated in the Complaint here, occurred more than 300 days prior to the date Misas filed her EEOC charge. Defs' Memo. at 9-10. Because the Court finds that a reasonable trier of fact could conclude that Misas was subject to a hostile work environment involving conduct beyond the two incidents described to the EEOC, this aspect of Defendants' motion for summary judgment is denied.

Misas filed her charge of discrimination with the EEOC on August 20, 2013. Klein Aff., Ex. A. Three hundred days prior to that was October 24, 2012. In her EEOC charge, Misas described two specific incidences of sexual harassment occurring in July 2012. *Id.* at 1. Events occurring in July 2012 are well outside of the 300-day window in which to bring a timely EEOC

---

[1]  The standard for discrimination under Title VII and the NYSHRL is the same. *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). The NYCHRL has a more liberal standard. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

charge. However, on the first page of her EEOC charge, Misas also noted that she was "continually exposed to harassment by [her] superiors Omar Edwards and Julio Cardoza" while she was employed by the Hospital. *Id.* Misas remained employed by the Hospital until June 21, 2013, only two months prior to the date she filed her EEOC charge. Defs' 56.1 Stmt. ¶ 51.

To the extent that Misas' claim relates to conduct occurring prior to October 24, 2012, it may be considered timely if that conduct was part of a continuing violation throughout her employment. A hostile work environment is one such continuing violation. Unlike discrete employment acts such as demotion, suspension, or termination, "[h]ostile environment claims are different in kind . . . . Their very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). "Accordingly, if 'any act falls within the statutory time period,' we need 'to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice.'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010) (quoting *Morgan*, 536 U.S. at 120).

Therefore, the first question is whether the timely incidents Misas has described are sufficiently related to the time-barred incidents, thereby making the July 2012 acts part of a timely hostile work environment claim. On this point, Defendants simply assert that the two July 2012 incidents Misas described in her EEOC charge constitute discrete acts rather than a continuing violation. *See* Defs' Memo. at 9-10. They have done nothing to engage with Misas' contention that she was "continually exposed to harassment" by Edwards and Cardoza while employed at the Hospital. Klein Aff., Ex. A at 1. Given this statement in her EEOC charge, Defendants are incorrect that Misas never made claims about Cardoza's conduct. Defs' Reply Memo. at 4-5. This also renders unavailing their argument that Misas failed to exhaust her claims about Cardoza. *Id.* at 5; *see Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir.

2006) ("claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made") (citation and quotation marks omitted). Additionally, Misas has explained her reason for not raising issues about Cardoza with the Hospital earlier. Misas Aff. ¶ 6.

In her affidavit in opposition to Defendants' motion for summary judgment, Misas provides additional detail regarding the continual exposure referenced in her EEOC charge. Misas Aff. ¶¶ 3-5, 8-13. The conduct by Edwards and Cardoza she describes makes the two incidents in the EEOC charge appear less like "discrete acts" and more like a pattern of harassment. It certainly would be reasonable for a rational juror to interpret the evidence in this way. All of these comments and behavior were directed towards Misas by the same two individuals and typically involved commentary about her physique or suggestions of promiscuity. Edwards made comments to Misas and other Hospital employees about Misas' breasts and also tried to kiss her.[2] Cardoza made sexual jokes and comments to Misas "practically daily," including several comments that implied Misas was a prostitute or "whore." *See, e.g., McGullam*, 609 F.3d at 78 (citing *Rowe v. Hussmann Corp.*, 381 F.3d 775, 781 (8th Cir. 2004) (noting same harasser committed same type of harassing conduct to create timely hostile environment claim)). While Defendants ask the Court to discredit these newly-described incidents as implausible based on Misas' failure to describe them in this level of detail earlier, *see* Defs' Reply Memo. at 4-5, whether and how Misas' earlier decisions in this regard impact her credibility remains a question for the jury. *Liberty Lobby*, 477 U.S. at 255.

---

[2] As Defendants correctly point out, Edwards' last day at the Hospital was July 27, 2012; that is, outside of the 300-day window. Defs' Reply Memo. at 4. However, unlike in the single decision they cite, here, Plaintiffs describe similar conduct by more than one supervisor in the same department during an overlapping time period, which may combine to create a continuing violation. *Cf. Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 368 (S.D.N.Y. 2002) (comments by different people in different departments in different time periods).

The question then becomes whether these events, taken together, constitute a hostile work environment. On a motion for summary judgment, a court asks "whether a reasonable factfinder could conclude, considering all the circumstances, that the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 600 (2d Cir. 2006) (citation and internal quotation marks omitted). The Second Circuit has cautioned that because "the existence of a hostile work environment is a 'mixed question of law and fact,'" it is "especially well-suited for jury determination." *Hill v. Taconic Dev. Disabilities Servs. Office*, 181 F. Supp. 2d 303, 321 (S.D.N.Y. 2002) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999)), *vacated on other grounds*, 57 F. App'x 9 (2d Cir. 2003).

Based on the record presented, the Court cannot say that, as a matter of law, no reasonable jury could conclude that Misas was subjected to a hostile work environment. *See, e.g.*, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102-03 (2d Cir. 2010) (question for jury whether sexual comments, telling others that plaintiff had worked in provocative jobs, and leering constituted hostile work environment). Because the jury will be entitled to consider more than the two July 2012 incidents, Defendants' argument regarding "the infrequency of the sexual conduct" is unavailing. Defs' Memo. at 17. Accordingly, Defendants' motion for summary judgment on Misas' sexual harassment claim is denied.

### 2. *Rhonda McIntosh*

Defendants argue that McIntosh's claim also is untimely because the one timely incident she described in her EEOC charge is insufficient sexual harassment as a matter of law. Defs' Memo. at 11-14. The Court disagrees.

Contrary to Defendants' argument, a rational trier of fact could easily conclude that the timely incident described for the EEOC—Cardoza's text message to Misas on November 7, 2012

telling her that she needed an "italian spanish [*sic*] sausage all the way" to make her feel better—was neither an earnest dietary suggestion nor welcomed banter between the two. *See* Klein Aff., Ex. C at 1. Drawing all reasonable inferences in McIntosh's favor, it would be eminently reasonable for a jury to determine that Cardoza's reference to an "italian spanish sausage" was sexual innuendo made to McIntosh on the basis of her sex. A juror also could reasonably conclude that the comment was uninvited, notwithstanding McIntosh's earlier text message stating that she needed to eat a papaya—which, she notes, is "known to boost the immune system"—because she was feeling unwell. McIntosh Aff. ¶ 9.[3]

Because a rational trier of fact could conclude that the "sausage" text message is actionable sexual harassment, the conduct McIntosh describes occurring outside of the statute of limitations may be considered part of her claim if it was part of a continuing violation. For all of the reasons just discussed with respect to Misas, the Court finds that McIntosh has described sufficiently related conduct occurring both during and after the 300-day window. Similarly, for the reasons discussed above, the Court also cannot say that, as a matter of law, no reasonable jury could conclude that McIntosh was subject to a hostile work environment on the basis of this conduct. Like Misas, in her affidavit, McIntosh describes a variety of conduct by Edwards and Cardoza. *See* McIntosh Aff. ¶¶ 3, 5-10. She explains that, "[d]uring the time that Cardoza was [her] supervisor," he "consistently engaged in inappropriate sexual behavior," including making "inappropriate jokes and comments of a sexual nature . . . practically daily." *Id.* at ¶¶ 5-6.

---

[3] McIntosh asserts that she responded to Cardoza's sausage text message by suggesting she have it "with onions" because she did not know how else to respond to Cardoza's "repulsive and vulgar" sexual innuendo. McIntosh Aff. ¶ 9. However, it appears that Cardoza, not McIntosh, made the "with onions" comment. Klein Aff., Ex. C at 1. While, as Defendants note, McIntosh's mistaken memory may raise questions about her credibility with respect to this and other aspects of her testimony, this determination is left for the jury, not the Court. *See* Defs' Reply Memo. at 3 n.2.

11

Cardoza also alluded to McIntosh and Misas being prostitutes and sent McIntosh inappropriate text messages in addition to the "sausage" text message already discussed. *Id.* at ¶¶ 7-8.

### B.   The Hospital May be Held Vicariously Liable

Defendants alternatively argue that the Hospital cannot be held vicariously liable for McIntosh's Title VII sexual harassment claim. Defs' Memo. at 14-17.[4]  Where, as here, "the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Gorzynski*, 596 F.3d at 103.  However, an employer may raise the so-called *Faragher/Ellerth* affirmative defense if the supervisor did not take any "tangible employment action" against the plaintiff or if the tangible employment action taken was not "part of the supervisor's discriminatory harassment." *Id.* at 103 n.3.  Under these circumstances, *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S 742 (1998), allow an employer that otherwise might be vicariously liable for the harassing conduct of its employee to avoid liability if it can prove that:  "(1) 'the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior,' and (2) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Gorzynski*, 596 F.3d at 103 (quoting *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S at 765) (alteration in original).

As a preliminary matter, McIntosh argues that the *Faragher/Ellerth* defense is not available because she was subject to a tangible employment action, in that Cardoza refused to offer her a full-time job or give her overtime hours. *See* Pls' Memo. at 16; McIntosh Aff. ¶ 25.

---

[4] On reply, Defendants now assert that this argument applies to Misas' Title VII claim as well. Defs' Reply Memo. at 6.  Even if the Court were to consider this argument belatedly made for the first time on reply, the Court would find that, for much the same reason as McIntosh, Misas also has raised a triable issue of fact as to the reasonableness of her failure to complain about Cardoza's conduct prior to her termination. Misas Aff. ¶ 6.

In making their argument, Defendants assume, without explanation, that Cardoza's conduct does not constitute a tangible employment action as a matter of law. However, for the reasons discussed further below, to the extent Cardoza did, in fact, have the ability to deny McIntosh transfers and overtime hours (which fact remains unclear), McIntosh has not plausibly proven that Cardoza's conduct in this regard constituted retaliation against her.

Assuming that the conduct described by McIntosh was not a tangible employment action, the Hospital has failed to establish that there are no genuine issues of material fact for trial regarding its *Faragher/Ellerth* defense. A defendant must satisfy both prongs of the *Faragher/Ellerth* defense, and, because there remain genuine issues of fact on the second prong—whether McIntosh unreasonably failed to take advantage of the Hospital's preventive or corrective opportunities—the Court need not address the first prong.

First, with respect to McIntosh's complaints regarding Edwards, there is no dispute that McIntosh did, in fact, take advantage of the Hospital's complaint mechanisms, rendering the *Faragher/Ellerth* defense unavailable as to him. Second, while it is undisputed that McIntosh's first written complaint did not mention any harassing conduct by Cardoza and that she did not mention Cardoza during the course of the Hospital's investigation, *see* Pls' 56.1 Resp. ¶¶ 27-32, 73, a plaintiff's credible fear of retaliation may make her failure to take advantage of the reporting mechanisms provided by her employer reasonable. *Leopold v. Baccarat, Inc*, 239 F.3d 243, 246 (2d Cir. 2001). To that end, a plaintiff must provide evidence "that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints." *Id.*; *see also Gorzynski*, 596 F.3d at 105 ("no requirement that a plaintiff exhaust all possible avenues made available where circumstances warrant the belief that some or all of those avenues would be ineffective or antagonistic").

McIntosh has raised a triable issue of fact as to the reasonableness of any credible fear of retaliation she may have experienced at the time. In addition to her own subjective fear—which would not be enough on its own—McIntosh asserts that it was "well known that reporting [Cardoza's] behavior would have no benefit, and would most likely subject the complainant to unjustified discipline." McIntosh Aff. ¶ 16. McIntosh explains that other women working in her department reported to her that their complaints about Cardoza went uninvestigated and/or led to retaliation. McIntosh Aff. ¶¶ 18-19, 21.[5] Cardoza also apparently confirmed his retaliatory conduct towards Misas because she would not "behave submissively toward him." *Id.* ¶ 11. Ostensibly giving further credence to her fear, she also contends that, at some point after reporting the harassment, she was retaliated against by Cardoza in the form of lost overtime and full-time employment opportunities. *Id.* ¶¶ 12, 25.

Defendants argue that the Court should disregard McIntosh's explanation because her purported fear of retaliation contradicts her earlier statement to the EEOC, through her attorney, that she did not report Cardoza because they were friends and she wanted to protect him. Defs' Reply Memo. at 9; *compare* McIntosh Aff. ¶¶ 16-17, *with* Weisenbach Reply Aff., Ex. B (McIntosh EEOC Reply Letter), at 2-3. While, on their faces, the two explanations do seem contradictory, the Court could conceive of scenarios in which the two statements could be read in harmony. And this is precisely the type of evidentiary weighing that is reserved for the jury. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (explaining that

---

[5] If offered for their truth, the recorded statements McIntosh appends to her affidavit and quotes therein are hearsay for which there does not appear to be any relevant exception. Fed. R. Evid. 804; *see Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A]n affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."). However, these statements, depending on their timing, which is not at all clear based on the parties' submissions, may be offered as evidence of McIntosh's state of mind regarding the potential impact of any complaints she made regarding Cardoza. Additionally, Plaintiffs also could choose to offer some portion of this testimony directly through the relevant witnesses, rather than through McIntosh.

it is only "extraordinary cases" where contradictions should cause court to "engage in searching, skeptical analyses of parties' testimony").[6] At this stage, McIntosh's stated fear of retaliation suffices to raise a question of fact appropriately left for the jury to evaluate whether McIntosh's behavior was reasonable under the circumstances. To be clear, the Court is not holding that Defendants cannot establish the *Faragher/Ellerth* defense as a matter of law, only that questions of fact remain for the jury to evaluate regarding the availability of the *Faragher/Ellerth* defense.

## C.     New York State Human Rights Law Claims

Defendants also argue that the Hospital cannot be held liable for Plaintiffs' NYSHRL sexual harassment claims based on Edwards' and Cardoza's conduct. Defs' Memo. at 18. While, as noted above, generally, Title VII and NYSHRL claims are evaluated identically, "courts have applied a stricter standard under the state . . . human rights laws with regard to the imputation of liability to an employer." *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 361 (S.D.N.Y. 2007) (collecting cases); *see also Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997) (not reaching question, but noting that "[i]t has also been suggested that in terms of imputing liability to the employer, the [NYSHRL] imposes a stricter standard than Title VII") (citation and internal quotations marks omitted). Under the NYSHRL, "liability for an employee's discriminatory conduct may only be imputed to an employer . . . if the employer became a party to it by encouraging, condoning, or approving it." *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 521 (S.D.N.Y. 2015) (citation and internal quotation marks omitted); *see also Franklin v. City of N.Y.*, 99 F. App'x 315, 316 (2d Cir. 2004) (citing *State Div.*

---

[6] If Defendants had chosen to depose Plaintiffs, they would have been able to explore the inconsistencies identified here if McIntosh's deposition testimony mirrored the statements she now makes in her affidavit. *See Rojas*, 660 F.3d at 106 (noting that plaintiff and her counsel "were given ample opportunity to explain or reconcile" inconsistencies, but failed to do so).

*of Human Rights ex rel. Greene v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 687 (1985)); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311-12 (2004).

While both Plaintiffs assert that it was "well known that reporting [sexually harassing] behavior through the appropriate channels would have no benefit, and would most likely just subject the complainant to unjustified discipline," *see* McIntosh Aff. ¶ 16; Misas Aff. ¶ 25, they both concede that the Hospital promptly investigated their complaints regarding Edwards and that they did not report any complaints regarding Cardoza prior to filing their EEOC charges, *see* Pls' 56.1 Resp. ¶¶ 24, 26-32, 73.[7] "It is only after an employer knows or should have known of improper discriminatory conduct that it can undertake or fail to undertake action which may be construed as condoning the improper conduct." *Doe v. State*, 89 A.D.3d 787, 788, 933 N.Y.S.2d 688, 690 (2d Dep't 2011) (citation and internal quotation marks omitted); *Forrest*, 3 N.Y.3d 295 at 311 (no evidence that employer "knew of, let alone condoned or acquiesced in" harassment). Therefore, liability cannot be imputed to the Hospital and summary judgment is granted to the Hospital on these claims.

### D.    New York City Human Rights Law Claims

Given that the Court has determined that Plaintiffs' Title VII and NYSHRL sexual harassment claims survive Defendants' motion for summary judgment, notwithstanding problems with imputing liability to the Hospital, Plaintiffs' NYCHRL sexual harassment hostile work environment claims must survive as well.  The NYCHRL has an even more liberal standard, under which a plaintiff "need not establish that the conduct was severe or pervasive,

---

[7] Contradicting this, in her affidavit, McIntosh states that she made complaints "further up the Hospital's chain of command" that were "quickly dismissed by management without any investigation or follow up." McIntosh Aff. ¶ 24. This non-specific and contradictory statement does not suffice to meet Plaintiff's burden to show that the Hospital "encouraged, condoned, or approved" either Edwards' or Cardoza's conduct.  In any event, the Hospital asserts that it did, in fact, investigate Cardoza after it became aware that he was involved in the incident with Edwards.  Weisenbach Reply Aff. ¶ 11.

only that 'she has been treated less well than other employees because of her gender.'" *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 450 (E.D.N.Y. 2013) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

## IV. Retaliation Claims

Defendants also argue that neither Plaintiff can prove a retaliation claim. Defs' Memo. at 20-24. In relevant part, Title VII provides that it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Under both Title VII and the NYSHRL, to state a *prima facie* claim for retaliation, a plaintiff must demonstrate that: (1) she participated in a protected activity; (2) the defendant was aware of her protected activity; (3) she suffered an "adverse employment action;" and (4) there is "a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (citation omitted and internal quotation marks omitted). Proof of a causal connection requires a plaintiff to show that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).[8] Under the *McDonnell Douglas* burden

---

[8] It remains an open question in this Circuit whether the Supreme Court's decision in *Nassar* also changed the causation standard for retaliation claims brought under the NYSHRL or if NYSHRL claims still may be proven with evidence that retaliation was "a 'substantial' or 'motivating' factor in the employer's decision." *Zann Kwan*, 737 F.3d at 845 n.7. District courts in this Circuit have applied *Nassar*'s "but for" causation test to NYSHRL claims, however. *See Richardson v. Bronx Lebanon Hosp.*, No. 11-cv-9095 (KPF), 2014 WL 4386731, at *16 n.16 (S.D.N.Y. Sept. 5, 2014) (collecting cases). The Court will follow this course as well, but, for the reasons discussed below, the Court also would have found that Misas and McIntosh did not prove that their protected activity was a "motivating factor" for the Hospital's allegedly adverse employment actions.

While retaliation claims under the NYCHRL are subject to a more forgiving standard, particularly with respect to the categories of employer conduct that will constitute retaliation, the NYCHRL still requires a plaintiff to demonstrate a causal connection. "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show

shifting framework, once a plaintiff has made her *prima facie* showing, the burden shifts to the defendant to "articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan*, 737 F.3d at 845; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). "The plaintiff must then come forward with [proof that the] non-retaliatory reason is a mere pretext for retaliation." *Zann Kwan*, 737 F.3d at 845.

First, with respect to both Plaintiffs, Defendants argue that Plaintiffs' written complaint in July 2012 regarding Edwards' behavior does not constitute protected activity because, in their complaint, they stated that they found the photographs on Edwards' computer accidentally, not that Cardoza showed the pictures to them. Defs' Memo. at 21-22. However, Plaintiffs need only show that they "possessed a good faith, reasonable belief that the underlying employment practice was unlawful under [Title VII]." *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013) (citation and internal quotation marks omitted). As Plaintiffs have now explained, they did not mention Cardoza's involvement in the incident, not because he was not involved, but because Cardoza pleaded with them not to include his name and "made it clear that if [they] *did* include his name, [they] would face repercussions." McIntosh Aff. ¶ 4; Misas Aff. ¶ 6. Notwithstanding the seeming contradictions in various versions of Plaintiffs' explanation for why they initially left out Cardoza's role in the incident, an explanation of any kind will suffice to raise a question of material fact as to whether Plaintiffs engaged in protected activity.

Second, as to Misas in particular, Defendants do not challenge the remaining elements of her *prima facie* case, instead offering a legitimate rationale for Misas' termination, thereby

---

that she took an action opposing her employer's discrimination, and that, *as a result*, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citations omitted, emphasis added); *see also* N.Y.C. Admin. Code § 8-107(7) ("It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person *because* such person has . . . opposed any practice forbidden under this chapter.") (emphasis added).

shifting the burden back to Misas to prove that the proffered reason is mere pretext. Defendants argue Misas' protected activity was not the "but for" cause of her termination; her violation of the Hospital's rules regarding copying timesheets, and subsequent lies about it, were the cause. Defs' Memo. at 22. Misas concedes that she broke the rules, but contends she did so only to protect herself from retaliation by Cardoza. Misas Aff. ¶¶ 18-22. She explains that, sometime after March 2013, when Cardoza first falsified her timesheets to get her in trouble, she made copies of her accurate timesheets to defend herself in the face of future fabricated timesheets. *Id.*

However, Misas nowhere contends that Cardoza personally made the decision to terminate her employment or that she explained the circumstances surrounding this situation to Hospital administrators who did, in fact, make the decision to terminate her employment. While Misas disputes Defendants' assertion that Cardoza had the authority to fire employees, she has not provided any evidence in support of that contention. *See* Pls' 56.1 Resp. ¶ 11. Further, without evidence that the relevant decision-makers understood Misas' reason for breaking the rules, there is no basis on which a rational trier of fact could conclude that the Hospital's reason for her termination was pretextual. *See* Weisenbach Reply Aff. ¶ 4. Her conclusory statement that one other employee who made copies of his or her timesheets around the same time was not disciplined does not prove that Misas' termination for that same conduct was pretext for retaliation. Misas Aff. ¶ 23. Misas does not explain the circumstances surrounding this other employee's conduct, how she came to know about it, or whether anyone who might have been in a position to reprimand that employee was aware of it. *Id.*; *see also* Weisenbach Reply Aff. ¶ 4 (Hospital unaware of other employees copying timesheets). Accordingly, the Hospital's motion for summary judgment on Misas' retaliation claims is granted as it relates to her termination.[9]

---

[9] Defendants do not make any arguments with respect to other alleged conduct that might constitute retaliation. *See* Misas Aff. ¶ 17 (Misas improperly suspended from work on multiple occasions). While there may be legitimate

Third, with respect to McIntosh, Defendants argue that there is no admissible evidence as to the fourth element of her *prima facie* case—that she was denied a transfer or overtime hours as a result of her protected activity. Defs' Memo. at 23. The Court agrees. McIntosh merely states that "because [she] would not play along with [Cardoza's] sexual misconduct, he refused to offer [her] a full-time job and refused to give [her] overtime." McIntosh Aff. ¶ 25. She does not explain what, if anything, she did to "not play along." *See Fitzgerald v. Henderson*, 251 F.3d 345, 356 (2d Cir. 2001) (discussing *quid pro quo* sexual harassment). She also does not connect this to her July 2012 complaint or any subsequent complaints lodged by her attorney.[10] While a causal connection may be established by proof of temporal proximity, the record is entirely devoid of evidence establishing the timing of McIntosh's requests for overtime hours and a transfer vis-à-vis her protected activity, which first took place in July 2012. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (collecting cases).

More fundamentally, McIntosh has not shown that Cardoza had authority to approve her requests for transfer or overtime hours in the first instance. In support of their motion for summary judgment, Defendants state that Cardoza did not have "authority to hire or fire employees or to make decisions about promotions or demotions." Defs' 56.1 Stmt ¶ 11; *see also* Weisenbach Aff. ¶ 33, Ex. F (Collective Bargaining Agreement) (Hospital makes promotion, overtime, and transfer decisions based on seniority). As noted above, while Plaintiffs dispute this assertion, the portions of their affidavits cited as evidence to the contrary do not support their

---

defenses to this claim, Defendants have not made them here. Accordingly, Misas' retaliation claims survive as to these other potentially adverse employment actions.

[10] Notwithstanding McIntosh's framing of the issue in her affidavit, in Plaintiffs' Rule 56.1 Statement, counsel states that "[a]s a result of McIntosh's complaints both from her and from her attorney, and as a result of her unwillingness to play along with Cardoza's sexual behavior, Cardoza refused to offer McIntosh a full-time job and refused to give her overtime even though she was senior to each of her co-workers." Pls' 56.1 Resp. ¶ 94 However, this conclusory assertion is not supported by the evidence (*i.e.*, McIntosh's affidavit) and still suffers from the same failure to establish a causal connection.

position. *See* Pls' 56.1 Resp. ¶ 11. For these reasons, McIntosh has failed to make her *prima facie* showing that retaliation was either a "but for" cause of Defendants' alleged conduct or even a substantial or motivating factor.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion for summary judgment on Plaintiffs' Title VII and NYCHRL sexual harassment claims is denied, but is granted as to the Hospital on Plaintiffs' NYSHRL claim for sexual harassment. Defendants' motion for summary judgment on Misas' retaliation claims is granted as it relates to her termination, but not any earlier suspensions. Defendants' motion for summary judgment on McIntosh's retaliation claims is granted. Defendants' motion for summary judgment on Plaintiffs' remaining common law claims is denied as moot given Plaintiffs' withdrawal of those causes of action.

**SO ORDERED.**

Dated: April 27, 2017
      New York, New York

                              **ANDREW L. CARTER, JR.**
                              **United States District Judge**